```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

| | |
|---|---|
| GERTRUDE WARD, | : |
| Plaintiff, | : |
| vs. | : |
| | :  CIVIL ACTION 05-0226-WS-M |
| JO ANNE B. BARNHART, | : |
| Commissioner of | |
| Social Security, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (SSI). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was waived in this action (Doc. 17).  Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be reversed, that this action be remanded, and that judgment be entered in favor of Plaintiff Gertrude Ward and against Defendant Jo Anne B. Barnhart.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a

reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born May 5, 1964.  At the time of the administrative hearing, Ward was thirty-nine years old, had completed a high school education in special education classes (Tr. 227, 231), and had previous work experience as an assembly line worker and a babysitter (Tr. 228-29).  In claiming benefits, Plaintiff alleges disability due to systemic lupus erythematosus, mental retardation, and arthritis of the right knee (Doc. 13).

The Plaintiff protectively filed an application for SSI on July 31, 2002 (Tr. 66-69).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Ward could perform her past work as an assembly line worker (Tr. 12-21).  Plaintiff requested review of the hearing decision (Tr. 220-21) by the Appeals Council, but it was denied (Tr. 5-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Ward alleges that:  (1) She meets the requirements of Listing 12.05C; (2) the ALJ did not pose a proper and complete hypothetical to the vocational expert; and (3) she is incapable of performing her past relevant work (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 14).

Plaintiff first claims that she meets the requirements for Listing 12.05C.  The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2005).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2005).

On October 30, 2002, Kenneth R. Schneider, Psychologist, examined Ward and administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III).  On that test, Plaintiff scored a verbal IQ of 73, performance IQ of 75, and a full scale IQ of 72 (Tr. 186-88); Schneider indicated his belief that the "test scores [could] be considered a valid representation of her actual intellectual functioning" (Tr. 187).  The Psychologist diagnosed Ward to have borderline intellectual functioning, but found her to be "without any diagnosable or significant psychological disturbance" and specifically stated that he did "not find that she meets the DSM-IV-TR criteria for any mental disorder" (Tr. 188).

Plaintiff was also examined by Carrie H. Johnson who also

3

administered the WAIS-III (Tr. 217-19).  Ward scored a verbal IQ of 68, a performance IQ of 70, and a full scale IQ of 66.  Noting that these scores placed Plaintiff in the extremely low range of intellectual functioning, the Examiner found Ward to be mentally retarded.

The ALJ noted Johnson's findings but quoted extensively from Schneider's report (Tr. 17-18).  The ALJ credited the report of Schneider over Johnson as the former is a Psychologist and the latter "a purported school psychometrist" (Tr. 19).  The ALJ also stated that "it was statistically not possible for an individual to score significantly higher on intelligence testing than [] actual intelligence or abilities will allow" (Tr. 19); the Court notes that there was no cited authority for this statement.  The ALJ went on to find that Ward did not meet the requirements of Listing 12.05C (*id.*).

Plaintiff has stated that the ALJ's decision on this claim is incorrect because the differences in the WAIS-III scores fall within the recognized margin of error for the test and that the difference was not "significantly higher" as stated by the ALJ (Doc. 12, pp. 8-9).  Though Ward specifically states that she is not arguing that the five-point margin of error should be read into the 12.05C Listing requirements (Doc. 12, p. 9 n.5), the Court finds that the statistical insignificance actually bolsters the ALJ's conclusion regarding the higher scores.  When this is coupled with the ALJ's determination that Schneider's findings were to

4

be given more credit because he was more specialized than Examiner Johnson, the Court finds substantial support for the ALJ's determination that Ward had not satisfied the requirements of Listing 12.05C.

Plaintiff also claims that the ALJ did not pose a proper and complete hypothetical to the vocational expert (hereinafter *VE*).  More specifically, Ward urges this Court to find that the ALJ's hypothetical failed to include a finding that Plaintiff would have moderate difficulty in maintaining concentration, persistence, or pace (Doc. 12, p. 13; *cf.* Tr. 199, 260).[1]  The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

In his hypothetical, the ALJ specifically directed the VE to the following limitation in proposing a hypothetical question regarding Plaintiff's ability to work:  "This claimant would have difficulties understanding, remembering [and] carrying out detailed tasks [secondary] to her intellectual [diagnosis] but can do simple repetitive tasks" (Tr. 205; *see* Tr. 260).  The VE concluded that, in spite of

---

[1] The Court notes that Plaintiff has also asserted that the ALJ did not state what weight he gave the Psychiatric Review Technique Form completed in the record (Doc. 12, p. 11).  The Court notes that the ALJ specifically stated that he was relying on this report in reaching his conclusions (Tr. 19-20).

these restrictions, Ward would be able to perform her past work as an assembly line worker (Tr. 261), a finding the ALJ used in reaching his decision (Tr. 20).

The Court finds that Plaintiff's moderate difficulty in maintaining concentration, persistence, or pace was substantially covered in the specific reference by the ALJ in his hypothetical. Though there was not a verbatim correspondence in the limitation descriptions, the Court finds, at most, harmless error in the ALJ's failure.

Finally, Ward has asserted that she is incapable of performing her past relevant work as an assembly line worker. Ward has directed this Court's attention to Social Security Ruling 82-62 which states that the ALJ, in finding that a claimant can perform past relevant work, must make a specific "finding of fact as to the physical and mental demands of the past job/occupation." Social Security Ruling 82-62 (1982 WL 31386, *4 (S.S.A.)). In discussing the nature of this finding of fact, the Ruling states the following:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and

6

> independent judgment required, and a
> description of tasks and responsibilities
> will permit a judgment as to the skill
> level and the current relevance of the
> individual's work experience.  In addition,
> for a claim involving a mental/ emotional
> impairment, care must be taken to obtain a
> precise description of the particular job
> duties which are likely to produce tension
> and anxiety, *e.g.*, speed, precision,
> complexity of tasks, independent judgments,
> working with other people, etc., in order
> to determine if the claimant's mental
> impairment is compatible with the
> performance of such work.  Persons with
> physical impairments (*e.g.*, cardiovascular
> or gastrointestinal disorders) may have
> performed stressful tasks.  This may also
> require a decision as to whether the
> impairment is compatible with the
> performance of such work.  If more than one
> job was performed during the 15-year
> period, separate descriptions of each job
> will be secured.

Social Security Ruling 82-62 (1982 WL 31386, *3 (S.S.A.)).

The Court notes that Plaintiff completed a Social Security form in which she indicated that her job required her to work eight hours a day, five days a week (Tr. 97).  The job did not require her to use machines, tools, or equipment, have technical knowledge or skills, or write reports or complete forms (*id.*).  The heaviest weight she had to lift was twenty pounds (Tr. 98).  At the hearing before the ALJ, Ward stated that she had made notebooks in this job and that, mostly, she put the spines in the notebooks, using a hand press (Tr. 257-58).  She could stand or sit to complete her task (Tr. 259).  Sometimes, she had to box the binders, lifting only one at a time, or remove something from the binders which went into the

trash (*id.*).  The VE characterized this work as light and unskilled (Tr. 260).  The ALJ made specific credibility determinations as to which parts of the medical evidence he used in reaching his decisions (*see* Tr. 19-20); though those determinations explain what he thought Ward's capabilities were, he did not state the mental and physical requirements of the assembly line worker.

The Court finds that the ALJ has failed to satisfy the requirements of Ruling 82-62 and 20 C.F.R. 404.1520(e).[2]  Though the ALJ found that Ward could perform her past work as an assembly line worker, nowhere in his decision is there a statement of the physical and mental demands of that job.  Furthermore, while there is some evidence of the physical demands of Plaintiff's job in the transcript, there is no evidence in the record concerning the mental demands of her work.  In light of the ALJ's specific finding that Ward suffers from borderline intellectual functioning (Tr. 20, ¶ 2), the Court finds that the ALJ's decision that she can return to her past work as an assembly line worker is not supported by substantial evidence.  Though the ALJ's conclusion may be correct, the record—and his determination as written—does not support it.

Based on review of the entire record, the Court finds

---

[2] "If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past."

that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is recommended that the action be reversed and remanded to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding the specific physical and mental demands of Plaintiff's past work as an assembly line worker.

Furthermore, it is recommended that a final judgment be entered ordering remand in this action pursuant to sentence four of 42 U.S.C. § 405(g).  *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).  For further procedures not inconsistent with this recommendation, see *Shalala v. Schaefer*, 509 U.S. 292 (1993).

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a

different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de</u> <u>novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 4th day of October, 2005.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

10